IN THE COURT OF APPEALS OF IOWA
No. 23-0940
Filed September 27, 2023

**IN THE INTEREST OF D.O.,**
**Minor Child,**

**C.R., Mother,**
    Appellant.
_____


Appeal from the Iowa District Court for Wapello County, William S. Owens, Associate Juvenile Judge.


A mother appeals the termination of her parental rights.  **AFFIRMED.**


Lynnette M. Lindgren of Faulkner, Broerman, & Lindgren, Ottumwa, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Sarah L. Wenke, Ottumwa, attorney and guardian ad litem for minor child.


Considered by Tabor, P.J., Buller, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**VOGEL, Senior Judge.**

A mother appeals from the termination of her parental rights to D.O., born in 2011.[1]  She argues the State failed to prove a statutory ground for termination, termination is not in D.O.'s best interests, placing custody of D.O. with a relative should preclude termination, and the State failed to provide reasonable efforts toward reunification.  We reject her arguments and affirm.

## I. Background Facts and Proceedings

In April 2021, D.O. reported to school officials that the mother hit him.  HHS and law enforcement observed multiple injuries on his body, including two large bruises on his thigh.  In an interview with HHS, the mother acknowledged spanking her children, including D.O., but she denied leaving any marks.  D.O. was soon removed from the mother's custody and placed with his other legal parent.  In June, D.O. was adjudicated as being in need of assistance.

In November 2022, the State filed a petition to terminate the mother's parental rights to D.O.  The matter proceeded to a termination trial in March 2023.  The juvenile court then terminated the parental rights of the mother and any unknown or known putative fathers.[2]  Only the mother appeals.

## II. Standard of Review

We apply de novo review to an order terminating parental rights.  *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021).  We give weight to the juvenile court's factual

---

[1] The mother has other children who are not part of this proceeding.  Additionally, the Iowa Department of Health and Human Services (HHS) was involved with the mother between 2011 and 2017 to address concerns with her mental health and substance abuse.

[2] The record is unclear on the identity of the child's other legal parent, whose parental rights were unaffected by the termination.

determinations, especially regarding witness credibility, but we are not bound by them. *Id.*

### III. Analysis

Generally, we use "a three-step analysis to review termination of parental rights. First, we consider whether there are statutory grounds for termination. Second, we determine whether termination is in the best interest of the child. Third, we consider whether we should exercise any of the permissive exceptions for termination." *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022) (citing *In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018)).

#### A. Statutory Ground

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(d), (e), (f), and (g) (2022). "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). The mother only challenges termination under section 232.116(1)(f).[3] Because the mother failed to challenge the other statutory grounds for termination, she waives any challenge to those grounds on appeal. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (stating we need not discuss the statutory grounds for termination when the parent does not dispute the existence of at least one ground); *Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal.").

---

[3] The mother also asserts termination was improper under Iowa Code section 232.116(1)(*l*). Because the State did not petition to terminate her parental rights under paragraph (*l*), and the juvenile court did not terminate her rights under paragraph (*l*), we do not consider this paragraph.

Furthermore, as explained below, the mother failed to adequately address her parenting and general behavior after removal. Thus, even if paragraph (f) were the only statutory ground at issue, we would find the State satisfied that ground for termination.

*B. Best Interests*

When evaluating the best interests of the child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). In arguing termination is not in D.O.'s best interests, the mother points to her participation in mental-health treatment, her sobriety, and her stable housing, employment, and transportation as evidence of her progress.

HHS became involved here due to concerns the mother was physically abusing D.O., and the mother's general behavior immediately raised additional concerns. During HHS's first interview with the mother, she was belligerent and uncooperative with HHS, and she shifted blame for D.O.'s injuries onto him for being aggressive and lying. When presented with the removal order, the mother attempted to flee from and then fought with law enforcement, resulting in her arrest for interference with official acts. Soon after removal, a physician examined D.O. and noted multiple injuries consistent with non-accidental trauma.

The mother initially received fully supervised visitation with D.O. She continued cursing at and resisting the service providers during these visits. She also used physical force to punish or otherwise direct D.O. and her other children during visitations, contrary to the explicit directions of supervising providers. In

September 2021, D.O. began refusing to participate in visits with the mother. Following his wishes and his therapist's advice, the mother has had no contact with D.O. since then. The HHS termination report shows the mother often refused to cooperate with HHS throughout the juvenile proceedings.

Following removal, HHS recognized the mother needed to improve her mental health. In the child-in-need-of-assistance adjudication, the juvenile court determined the mother should follow HHS recommendations to submit to a psychological evaluation and cooperate with follow-up treatment. Accordingly, the mother underwent a psychological evaluation dated November 2021. The evaluating psychologist opined the mother met the criteria for borderline personality disorder; major depressive disorder, moderate, recurrent; and post-traumatic stress disorder; and she showed features of obsessive-compulsive personality disorder. The psychologist recommended the mother participate in psychotherapy, specifically dialectical behavioral treatment.

The mother largely resisted treatment recommendations from the psychologist and HHS. Instead, the mother continued seeing her long-time therapist, whom she had seen for upwards of twelve years. While she made some efforts to address her mental health through her therapist, this therapist told HHS that the mother's "progress was minimal" and "this was as good as she kind of was going to be." The therapist also told HHS that, while he advocates for his client, he was "not sure [the mother] would benefit" D.O. due to her instability. Additionally, the mother has been inconsistent in taking prescribed medications for her mental health.

The mother underwent a second psychological assessment with a different psychologist dated October 2022. This ensuing report was similar to the first, underscoring the mother's lack of progress on her mental health. The second psychologist noted the mother's "long history of uneven performance, poor impulse control, and acting out behaviors directed against her children." The psychologist recommended intensive services, but the psychologist opined the mother would likely continue having "problems with emotional control and stability" and her prognosis was "at best, guarded" considering her current attitude and past history.

The mother's testimony at the termination trial confirms her lack of progress. She continued her defensive behavior, minimizing the physical and emotional harm she inflicted on D.O. and her other children. For example, she denied punching her older child in the face during a supervised visit, claiming instead she only "popped him in his mouth because he was using some profanity." She also insisted she "never left a mark on [her] children" despite all evidence to the contrary, which includes photographs of the marks found on D.O.

Furthermore, D.O. has thrived since removal from the mother. Both D.O.'s therapist and the HHS worker testified his behaviors have greatly stabilized and improved in the year leading up to termination and he feels comfortable in his other parent's home.

Considering the harm the mother inflicted on D.O. before removal and her lack of progress since then, we agree termination of her parental rights is in D.O.'s best interests.

*C. Relative Custody*

The mother argues termination is not appropriate because D.O.'s other parent has legal custody. *See* Iowa Code § 232.116(3)(a) (stating the court need not terminate parental rights if "[a] relative has legal custody of the child"). This exception is "permissive, not mandatory." *In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018) (quoting *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014)). "An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child. The child's best interests always remain the first consideration." *Id.* (quoting *In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997)). As explained above, termination is in D.O.'s best interests, and he is thriving in the other parent's custody. We decline to apply this exception to termination.

*D. Reasonable Efforts*

HHS must "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(6). The mother argues HHS failed to make reasonable efforts because she had no contact with D.O. after he began refusing visits in September 2021, which refusal was supported by D.O.'s therapist. However, a parent must object to the services offered "early in the process so appropriate changes can be made." *In re L.M.*, 904 N.W.2d 835, 840 (Iowa 2017) (quoting *In re C.B.*, 611 N.W.2d 489, 493–94 (Iowa 2000)). "In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." *Id.* (citation omitted); *see also In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) ("If a parent has a complaint regarding

services, the parent must make such challenge at the removal, when the case permanency plan is entered, or at later review hearings."). The mother did not file a motion requesting additional contact with D.O. until March 2023, three months after the State filed the termination petition. Thus, she waived any reasonable-efforts challenge during the pendency of these proceedings. *See L.M.*, 904 N.W.2d at 840. Furthermore, we note the lack of contact resulted from the mother's behavior, which inflicted harm on D.O., along with her refusal to fully address her mental health and otherwise cooperate with the other services HHS offered.

**IV. Conclusion**

The mother waived her challenge to the statutory grounds for termination, termination is in the best interests of D.O., placing him in the custody of his other parent does not preclude termination, and the mother waived her reasonable-efforts challenge.

**AFFIRMED.**